EFFIE COCKRELL, WIDOW OF DORSEY COCKRELL, DECEASED EMPLOYEE, PLAINTIFF v. EVANS LUMBER COMPANY, SELF-INSURED EMPLOYER, (ALEXSIS, INC., SERVICING AGENT), DEFENDANT

No. 9010IC178

(Filed 2 July 1991)

**Master and Servant § 94.3 (NCI3d)— workers' compensation— disabled widow of employee—400 weeks compensation—mistake**

A final award in a workers' compensation case was remanded where the plaintiff's husband was killed while working in defendant's sawmill; plaintiff was 62 years old, functionally illiterate, and physically disabled; she was told that workers' compensation was automatic and that she would not need an attorney; plaintiff received a letter from defendant or its servicing agent informing her that she would receive benefits for 400 weeks and enclosing a form which plaintiff signed and returned; defendant intended to pay plaintiff the benefits to which she was entitled but did not know that she was disabled; plaintiff eventually discovered that a disabled widow who does not remarry is entitled to lifetime benefits; plaintiff requested that the award be modified or set aside; and the Industrial Commission refused because there had been a mistake of law by plaintiff and a mistake of fact by defendant, but no mutual mistake of law or fact. The documents, stipulations and findings indisputably show that the parties and the Commission did not act upon the unilateral mistakes of law or fact, but upon defendant's mistaken representation that the agreement was a proper one. Since the mistake benefited its initiator to the detriment of the misinformed, fundamental equitable principles require that the mistake not be perpetuated.

**Am Jur 2d, Workmen's Compensation §§ 465, 597.**

APPEAL by plaintiff from Opinion and Award filed 24 July 1989 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 September 1990.

*Valentine, Adams, Lamar, Etheridge & Sykes, by Raymond M. Sykes, Jr., for plaintiff appellant.*

*Maupin Taylor Ellis & Adams, P.A., by Richard M. Lewis and Jack S. Holmes, for defendant appellee.*

PHILLIPS, Judge.

The appeal in this workers' compensation case is from a decision refusing to modify or set aside a final award entered by the Commission on 13 February 1980. The award approved a settlement between the parties requiring defendant to pay plaintiff $67.33 a week for 400 weeks because of her husband's death by accident while working for defendant; and under the provisions of G.S. 97-17 it may be set aside only upon grounds specified therein, one of which is the mutual mistake of the parties, *Pruitt v. Knight Publishing Co.*, 289 N.C. 254, 221 S.E.2d 355 (1976), the ground that plaintiff asserts in this case. In pertinent part G.S. 97-38 provides and provided when the award was made that compensation payments due on account of the death of a worker shall be paid over a 400 week period in all cases, and that in any case involving a surviving spouse who is unable at the time of the worker's death to support her or his self because of physical or mental disability, the payments shall continue after the 400 week period during his or her lifetime or until remarriage. The parties' mistake in reaching the settlement upon which the award is based, so plaintiff contends, was in assuming that she was entitled to compensation for the usual 400 week period, when as decedent's totally disabled widow she was entitled to compensation for as long as she lives or until she remarries. That when the settlement was made plaintiff was entitled to compensation beyond the 400 week period is now clear, as the Commission's findings, no longer contested by defendant, establish that when her husband was killed plaintiff was physically disabled and incapable of supporting herself and has not remarried. The only dispute now is whether the parties' settlement and the award based upon it was affected by a mutual mistake within the contemplation of G.S. 97-17. The established facts from which the Commission determined that a mutual mistake was not made are as follows:

On 5 October 1979, when her husband was killed while working in defendant's sawmill, plaintiff was 62 years old, uneducated, functionally illiterate, and physically disabled. A few days thereafter she went with friends to the office of the North Carolina Industrial Commission in Raleigh and spoke with an employee, who told her that benefits for an employee's death under the Workers' Compensation Act were automatic and that she would not need the services of an attorney in getting them. Plaintiff's first contact with defendant or its servicing agent about her claim was when she received

a letter dated 7 December 1979 from the servicing agent's vice president stating in pertinent part:

> As you know, we have been investigating the death of your husband as a possible Workmen's Compensation claim during his employment with Evans Lumber Company.
>
> We have now completed this investigation and determined that this claim is compensable. Under these circumstances, we enclose the proper forms for your signature. You will note that this will pay you $67.33 for a total of 400 weeks as the dependent of Mr. Cockrell at the time of his death. If you will sign this form and return same to me, we will bring your payments up to date and will continue the payments on a weekly basis.

The forms enclosed were a Form 30 Agreement For Compensation For Death that defendant had filled in and executed. In pertinent part it stated that defendant and the deceased were bound by the Workers' Compensation Act and that his death resulted from an injury by accident in the course of his employment; that plaintiff was decedent's widow and only surviving dependent and 62 years old; that his average weekly wage was $100.99; and that "based on the foregoing facts" defendant agreed to pay and plaintiff agreed to accept compensation at the rate of $67.33 per week for 400 weeks. Neither the agreement nor the letter stated whether plaintiff was or was not disabled or able to support herself. After a relative read the letter and the Form 30 agreement to plaintiff she signed the agreement and returned it to defendant, who forwarded it to the Industrial Commission, which approved it on 13 February 1980. Defendant had not investigated plaintiff's physical or mental condition and did not know that she was totally disabled; in sending the agreement for 400 weeks compensation to plaintiff, defendant did not attempt to mislead or deceive her. Defendant knew that a totally disabled spouse of a deceased worker could be entitled under G.S. 97-38 to receive workers' compensation payments beyond the usual 400 week period. Plaintiff, on the other hand, knew that she was totally disabled, but did not know that that made any difference to her rights under the Workers' Compensation Act. Sometime shortly before 21 May 1987, when the last of the 400 payments was due, an Industrial Commission bulletin explaining death benefits under the Workers' Compensation Act came into plaintiff's possession and was read to her by a relative.

At that time plaintiff learned for the first time that as a disabled widow of an accidentally killed worker she had been entitled to receive compensation payments during her lifetime or until remarriage. A few days after that a letter requesting that the award be modified or set aside was signed by plaintiff and sent to the Commission.

After hearing plaintiff's motion the Deputy Commissioner made findings essentially as stated above, and concluded that "[t]here was error due to mutual mistake with respect to and the execution of Form 30 (Agreement for Compensation)," and directed that the payments be continued "for her lifetime or until her remarriage." Upon defendant's appeal the Full Commission found and concluded that the award was not based upon a mutual mistake and reinstated it. In some conclusory remarks that preceded its revised findings of fact, the Commission stated:

> Plaintiff contends that the mistake was one of fact—that at the time of the agreement both parties thought the case involved a routine death claim. The actual mistake, though, was one of law. Plaintiff did not know that a legal distinction was made between a disabled widow and one who was able to work. Furthermore, there was no mutual mistake at all, as presumably defendant was aware of the law, and plaintiff was aware of the fact that she was disabled. Neither, however, was aware of both the law and the facts.

And the Commission in effect reiterated these remarks in Finding of Fact 8:

> 8. Plaintiff was mistaken about the applicable law at the time of her husband's death. Defendant was mistaken about plaintiff's disability at the time of death. Therefore, there was no mutual mistake of fact or law.

But the Commission did not mention, or determine the legal effect of, the mistaken impression that both parties obviously had as to the agreement properly providing for all the payments that plaintiff was entitled to receive under the Workers' Compensation Act. By focusing only upon segments of fact and law that were misunderstood by one of the parties and by disregarding the failure of the overall agreement to comply with the intention of both parties, the Commission in effect failed to see the forest for the trees. That both parties did not have the same understanding or

**COCKRELL v. EVANS LUMBER CO.**

[103 N.C. App. 359 (1991)]

misunderstanding of either the law or underlying facts, as the Commission found, is not decisive; for it is indisputable that both mistakenly thought that the agreement provided for plaintiff to receive everything that she was entitled to under the Act. The death claim was clearly compensable and nothing in the record or the Commission's findings suggest that in signing the agreement either party intended to negotiate about or compromise anything. Nor is it indicated that the misunderstood segments of fact and law that the Commission deemed determinative were ever mentioned, considered, or agreed to by either party. And since the Commission found and it was agreed that defendant did not intend to mislead or deceive plaintiff, it necessarily follows that in preparing the agreement to provide for plaintiff to receive only 400 payments that defendant mistakenly thought that plaintiff was entitled only to that number; and that plaintiff mistakenly accepted defendant's representation as being true is manifest.

The mutuality of the mistake is self-evident. Without knowing or having any basis for believing that plaintiff was entitled to compensation payments for just 400 weeks, defendant mistakenly prepared the agreement to so provide, and by its letter represented to plaintiff and the Industrial Commission that it was the "proper" period required by the Workers' Compensation Act; and plaintiff, not knowing what payments she was entitled to and understanding that the benefits under the Act were automatic, accepted defendant's statement that the agreement was the "proper" one under the Act and signed it. Thus, both parties mistakenly thought that the agreement provided for plaintiff to receive all the payments that she was entitled to, and their mutual mistake is correctable by equity.

> The mistakes relieved against in equity relate most frequently to written instruments, and may be either mistakes in expression, affecting the sense of the instrument itself, or mistakes inducing the parties to execute the instrument. In the former case the mistake does not affect the equities of the agreement itself, but by reason thereof the agreement actually made has not been correctly embodied in the instrument, while in the latter case the instrument correctly embodies the agreement made, or is appropriate to its execution, but the parties would not have entered into such an agreement but for the mistake. Equity will grant relief against misprisions and mistakes in court proceedings not of a judicial character,

and even against judicial mistakes, where the court has been misled as to a fact, and has pronounced a judgment which otherwise would not have been given.

30 C.J.S. *Equity* Sec. 47, pp. 867, 868 (1965).

Since the documents, stipulations and findings indisputably show that the parties and Commission did not act upon the unilateral mistakes of either law or fact referred to in the Opinion and Award, but upon defendant's mistaken representation that the agreement was a "proper one," and since the mistake benefited its initiator to the detriment of the misinformed, acquiescent plaintiff, fundamental equitable principles require that the mistake not be perpetuated.

The Opinion and Award appealed from is reversed and the matter remanded to the Industrial Commission for the entry of an Opinion and Award modifying the earlier Opinion and Award to provide for the continuation of plaintiff's payments until she remarries or dies.

Reversed and remanded.

Chief Judge HEDRICK and Judge ARNOLD concur.