The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner, Jr., and the brief and oral argument of defendant before the Full Commission. Plaintiff was unable to attend oral argument before the Full Commission because she had just started a new job.
Lay testimony in this matter was heard before Deputy Commissioner Chrystal Redding Stanback in Winston-Salem on December 5, 1995. Following the hearing, Deputy Commissioner Stanback ordered the defendants to obtain a complete set of medical records from plaintiff's treatment and provide a copy of the same to the plaintiff and the Industrial Commission. By Order dated March 6, 1996, Deputy Commissioner Stanback reset this matter for the taking of medical testimony, as the medical records submitted did not sufficiently address the question of causation and the defendants did not stipulate to the records. A hearing was scheduled for the taking of medical testimony on October 16, 1997 before Deputy Commissioner Edward Garner, Jr. No doctors were present for the hearing, but the plaintiff offered some medical records into evidence over the defendants' objection. Subsequent to the hearing, Deputy Commissioner Garner submitted interrogatories to the doctors. Responses to said interrogatories have not been received by Defense Counsel, nor have they been made part of the Transcript of the Evidence.
The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's award of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and defendant-employer.
3. Plaintiff's average weekly wage is as set forth on the Form 22 (Wage Chart).
4. Plaintiff is alleging an injury by accident or an occupational disease that occurred on or about October 28, 1994, resulting in an injury to her feet.
5. Defendant-employer has denied liability.
6. The issues to be determined by the Commission are whether plaintiff suffers from a compensable injury, and, if so, is she entitled to medical treatment for that injury.
***********
Based on the credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed with Employer-Defendant on June 7, 1993 as a marinator. Employer-Defendant required all employees in processing to wear steel toed boots. At the time plaintiff was hired, twenty dollars were subtracted from her paycheck to pay for company issued steel toed boots. The steel toed boots purchased by plaintiff were too large, and she wore two pair of thick, warm socks under the boots.
2. Plaintiff experienced pain in her left foot while wearing the boots, and a knot developed on the side of her left foot. In approximately February of 1994, plaintiff reported her foot pain to her supervisor and personnel manager. On her own, plaintiff presented to Dr. Murphy in February of 1994. Dr. Murphy prescribed Ansaid, and referred plaintiff to a foot specialist, Dr. Richard O'Keefe at Salem Orthopedic Sports Medicine in Winston-Salem, NC. In approximately March of 1994, plaintiff presented to Dr. O'Keefe, who recommended she wear a different type of shoe. Dr. O'Keefe examined plaintiff on only one occasion, and did not conduct any tests or prescribe any medication.
3. Plaintiff was referred by her personnel manager to Dr. Morgan, the company physician, for treatment in June of 1994. Plaintiff bought duck boots for use in her employment in approximately March of 1994, but when they failed to keep her legs and feet dry, she informed Employer-Defendant that she needed a different type of boot. As a result, she was a issued a pair of non-steel toed rubber boots in approximately December of 1994.
4. Plaintiff's use of the duck boots and non-steel toed rubber boots did not resolve her foot problems. Plaintiff missed no time from work due to her foot problems.
5. In an opinion and Award filed May 8, 1998, Deputy Commissioner Garner ordered the defendants to provide the medical treatment recommended by Dr. O'Keefe. From this Opinion and Award, the defendants appealed to the Full Commission.
***********
Based on the foregoing findings of fact the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Deputy Commissioner erred in basing his opinion and award on Dr. Richard M. O'Keefe's medical records, as such medical records were not properly authenticated and were therefore inadmissible as hearsay.
In Hedrick v. Southland Corporation and Travelers InsuranceCompany, 41 N.C. App. 431, 255 S.E.2d 198, (1979), the North Carolina Court of Appeals stated that "medical records are allowed into evidence as an exception to the hearsay rule if they are made in the regular course of business, made contemporaneously with the events by one authorized to make them, and are identified and authenticated." Id. 41 N.C. App. at 435-36. In the case at hand, no doctors were present to testify at the October 16, 1997 hearing before Deputy Commissioner Garner. As a result, the medical records submitted to the Deputy Commissioner could not be properly authenticated, and are therefore inadmissible.
In addition, the defendants were never given the opportunity to cross-examine Dr. O'Keefe, or any other doctor involved in plaintiff's medical care. In occupational disease cases, such as this one, it is important that medical experts who testify or render opinions regarding causation or increased risk are fully aware of all facts regarding the plaintiff's potential exposure to harmful conditions. Without cross-examination, the defendants have been unable to verify that the doctors were given complete and accurate work, exposure, medical, and family histories prior to providing an evaluation. The defendants have also been unable to verify that the doctors understood the legal issues and terminology involved in a diagnosis of occupational disease, such as significant contribution, significant causal factor, and increased risk.
2. There is no competent evidence on the record to support a finding that plaintiff's bunions constitute an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff failed to prove her case and her claim is and must be DENIED.
2. Defendants shall pay the costs due the Commission.
This 4th day of February 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER