***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn with modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in and by a pre-trial agreement:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the decedent at all relevant times herein.
3. The plaintiff, Lindsey Gaines, sustained an admittedly compensable injury on June 5, 1999, which resulted in death on that date.
4. Lindsey Gaines was survived by his wife, Linda Gaines, who is currently receiving death benefits.
5. Defendant-Carrier is Reliance Insurance Company, by and through the North Carolina Insurance Guaranty Association.
6. The decedent's average weekly wage was $941.00, which yields the maximum compensation rate of $560.00 per week.
7. Previously in this action, Deputy Commissioner Lorrie L. Dollar filed an interlocutory opinion and award on June 26, 2000. Pursuant to the above-referenced opinion and award, the following items are currently in documentary evidence in this matter:
a. An affidavit of Linda Gaines (4 pages);
b. Medical records of Linda Gaines (67 pages);
c. Birth certificate of Brittany Michelle Johnson; and,
d. Birth certificate of Joshua Dean Johnson.
8. The issues for hearing before the Deputy Commissioner were:
 a. Whether or not plaintiff is entitled to death benefits after the expiration of 400 weeks from the date of the Decedent-Employee's death pursuant to N.C. Gen. Stat. § 97-38; and,
 b. Whether the Industrial Commission can determine if plaintiff is entitled to lifetime benefits before the expiration of the statutorily mandated 400-week period.
 *********** EVIDENTIARY RULINGS
At the first hearing before the Deputy Commissioner of this matter, plaintiff's counsel offered the decision of the Social Security Administration in support of Mrs. Gaines' claim. At that time, the Deputy Commissioner disallowed this item into evidence, stating that it was irrelevant to the determination at hand. In the months to follow, as the rehabilitation specialist for the defendant prepared his testimony, the Deputy Commissioner ordered plaintiff's counsel to produce Mrs. Gaines entire Social Security file to defendants. Thereafter at the second hearing before the Deputy Commissioner of this matter, when the testimony of the rehabilitation specialist was taken, the Deputy Commissioner changed his earlier ruling and allowed the entire Social Security record of Mrs. Gaines into evidence. Mr. Henderson had apparently based his rehabilitation report and opinion upon Mrs. Gaines Social Security record, and therefore the Deputy Commissioner changed his opinion on relevancy and entered the same into the record. The Full Commission finds these evidentiary rulings of the Deputy Commissioner to be proper.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the admittedly compensable injury, the decedent plaintiff was 64 years old and was employed as a roll operator. He married Linda Gaines on July 28, 1973. The compensable injury and resulting death both occurred on June 5, 1999.
2. Pursuant to Deputy Commissioner Lorrie Dollar's order of June 26, 2000, the minors Joshua Dean Johnson and Brittany Michelle Johnson are each entitled to one-third shares of the death benefits payable to Linda Gaines over 400 weeks or until such time as each minor reaches age 18.
3. In 1972, Mrs. Gaines was in a severe motor vehicle accident in which her left hip was broken. This injury required left hip and leg open reduction and internal fixation, which resulted in the left leg becoming one inch shorter than the right leg. This chronic left leg deformity is the cause of the serious and debilitating current osteoarthritis in the left knee of Mrs. Gaines. Additionally as a result of this accident, Mrs. Gaines suffered a skull and right jaw fracture, with the jaw fracture requiring corrective surgery.
4. In 1996, Mrs. Gaines was the victim of another serious motor vehicle accident. As a result of this accident, Mrs. Gaines suffered a serious crush injury to her right ankle. This injury resulted in open reduction and internal fixation surgery on the right tibula/fibula. Mrs. Gaines continues to suffer pain and disability from this right leg injury.
5. The combination of the injuries of Mrs. Gaines left hip and right ankle has caused severe and pronounced osteoarthritis in both knees, which is worse on the left. Furthermore the combination of these conditions has caused a pronounced limp in Mrs. Gaines gait, the inability to stand for any prolonged periods, as well as the inability to squat or stand on heel or toes.
6. Mrs. Gaines made her initial application for Social Security disability income on March 31, 1999, three months prior to her husband's death. Mrs. Gaines stated that she had not worked since 1994. She stated her inability to work was because she no longer was able to sit or stand for any length of time due to pain in both legs.
7. Mrs. Gaines further cited the reasons for her inability to work in her March 1999 Social Security application in which she listed extremely high blood pressure that caused headaches and inability to concentrate, as well as a hiatal hernia, gallstones, and depression.
8. Mrs. Gaines' initial application for Social Security, as well as her request for reconsideration, was denied. Mrs. Gaines then re-filed with a new date of onset of June 5, 1999, for widow's disability benefits, and the Social Security Administration found Mrs. Gaines disabled and entitled to Title II benefits under Sections 202(e) and Sections 223 of the Social Security Act.
9. As of June 5, 1999, Mrs. Gaines was unable to support herself. She suffered from osteoarthritis, left lower extremity deformity, pain and depression with anxiety. These impairments prevented her from engaging in substantial gainful activity at any exertional level on a fulltime, consistent, competitive basis due to a combination of pain, depressive symptoms, and anxiety.
10. The medical evidence establishes that Mrs. Gaines experiences severe pain in her left knee that is exacerbated by right ankle pain and intermittent low back pain that has become constant, and that she has a deformity of the left leg, which is approximately one inch shorter than the right leg. Mrs. Gaines also has difficulty standing and pulling objects. She has a decreased range of motion in her left knee and leg, but there is no clubbing, edema or cyanosis in her lower extremities. A disability consultative evaluation that was conducted in April 1999 indicates that Mrs. Gaines had a slight limp and was unable to stand on her heels and toes, squat and rise, or tandem walk.
11. Additionally, a psychological evaluation was completed in March 2000 by Dr. William Link, a psychologist, which indicates, and the Full Commission finds as fact, that Mrs. Gaines suffers from low morale, poor memory, decreased concentration, feelings of alienation, diminished energy and indecisiveness, and that she functions intellectually in a range lower than the average range secondary to depression and anxiety. During the psychological evaluation, Dr. Link noted that the claimant's mental capacities waned and her efficiency deteriorated as the assessment progressed. Mrs. Gaines had decreased ability to interact appropriately in social setting and is unable to deal with work stress or understand, remember, and carry out complex job instructions.
12. In addition to undergoing medication therapy, and a course of physical therapy with minimal benefits, Mrs. Gaines suffers from diminished mental stamina due to pain, depression, and anxiety. She has been without any treatment for her mental impairments, although she has been prescribed psychotropic medications by her physician's assistant. Mrs. Gaines continues to experience severe leg and foot pain difficulties due to depression and anxiety.
13. There are medical signs and laboratory findings of a medically determinable disorder with intense and persistent pain and limitation of motion as well as a mental impairment consistent with Mrs. Gaines's credible allegations. Also, based on the objective medical evidence, the Full Commission finds that Mrs. Gaines's description of her limitations is consistent with the record when considered in its entirety.
14. In assessing Mrs. Gaines's residual functional capacity, the Full Commission finds that Mrs. Gaines suffers from severe chronic pain that prevents her from being on her feet, sitting, and carrying out most activities of daily living for any length of time. Mrs. Gaines suffers for familial and psycho-social stressors that include the loss of her husband in June 1999, the death of her son in November 1999, and the responsibility of rearing her two grandchildren. Mrs. Gaines' symptoms preclude the minimal walking, standing, lifting, carrying, and sitting requirements necessary for work at any exertional level on a full-time, consistent basis. Mrs. Gaines's mood disturbance and anxiety prevent her from interacting appropriately with supervisors and co-workers and from focusing attention sufficiently to complete simple routine repetitive tasks consistently. Due to Mrs. Gaines's pain, anxiety, and depression, she is unable to accomplish a normal workweek without an inordinate amount of interruptions for psychological and medical attention.
15. Although there is some dispute in the record, the more credible evidence shows that Mrs. Gaines was unemployed from approximately 1973, when she married the plaintiff-decedent, until she attempted to return to work full time at Badger Sportswear. However sometime around the early 1970's, Mrs. Gaines worked as a waitress and as a "travel agent." Though neither the record nor Mrs. Gaines' recollection is clear on this point, it appears as though Mrs. Gaines worked as a restaurant employee/waitress before her first catastrophic orthopaedic injury in 1972.
16. Gregory B. Henderson, a qualified rehabilitation specialist, testified that Mrs. Gaines could perform numerous kinds of job activity; however, this opinion was based on inaccurate work restrictions, failed to take into account psychological factors, and therefore is found not credible by the Full Commission.
17. Mr. Henderson stated that he based his entire rehabilitation opinion upon the work restriction that was generated by a Social Security doctor, Jack Drummond, M.D., that Mrs. Gaines could stand and work for 6 to 8 hours a day. The functional capacity evaluation performed by Dr. Drummond is completely inconsistent with the record in its entirety, including the Disability Determination Evaluation of Dr. Tulula Lowry, which is replete with documentation as to the seriousness of the injuries to both of Mrs. Gaines' legs and her resulting disability.
18. Mr. Henderson further testified that he did not take into account Dr. Link's opinion of Mrs. Gaines' psychological and cognitive limitations causing her inability to work; however, he further testified that he had no other psychological evaluations upon which to base his rehabilitation plan, and he never personally interviewed Mrs. Gaines.
19. Mr. Henderson's rehabilitation opinion is further found to be not credible due to the fact that the closest statistical information that he had was for the Cumberland County Metropolitan Area in 1999, as opposed to the information for the small-town, rural area of Robeson County in which Mrs. Gaines resides.
20. Based on the greater weight of medical evidence in this case, as well as Mrs. Gaines's credible testimony, Mrs. Gaines suffers severe bilateral leg pain and disability that make it impossible for her to stand in a work-type environment for any prolonged period. Furthermore, Mrs. Gaines suffers from depression, anxiety, and a consistent lower-functional I.Q., which make it difficult if not impossible for her to maintain gainful employment.
21. The greater weight of the evidence establishes the fact that as a result of her numerous aforementioned medical conditions, Mrs. Gaines was completely unable to support herself as of June 5, 1999.
 *********** CONCLUSIONS OF LAW
1. The Industrial Commission may allow into evidence a widow's social security file containing medical reports of various doctors and may use such reports to establish a widow's disability. Hedrick v. Southland Corp., 41 N.C. App. 431,255 S.E.2d 198 (1979).
2. Plaintiff was unable to support herself as set out in N.C. Gen. Stat. § 97-38 as of the employee's death on June 5, 1999, due to her severe orthopaedic conditions, her chronic and poorly treated high blood pressure, and her psychological disorders, as well as numerous other medical conditions. Her age, education, and prior employment history also were limiting. N.C. Gen. Stat. § 97-38; Hedrick v. Southland Corp., 41 N.C. App. 431,255 S.E.2d 198 (1979).
3. As a result of plaintiff Linda Gaines' inability to support herself as of June 5, 1999, she shall receive compensation payments that shall continue during her lifetime or until re-marriage. N.C. Gen. Stat. § 97-38; Hedrick v. Southland Corp.,41 N.C. App. 431, 255 S.E.2d 198 (1979).
4. The test of a widow's inability to support herself is to be applied as of the date of the compensable death. See Cockrell v.Evans Lumber Co., ___ N.C. App. ___, 407 S.E.2d 248 (1991), where the Court of Appeals itself applied that date in a case where the Industrial Commission had ruled against the widow. Although the 400 weeks had passed, the Court looked to conditions prevailing as of the date of the compensable death and not the conditions that obtained after the 400 weeks had expired. Indeed, there was no evidence of the widow's ability or inability to support herself after the 400 weeks had run.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff Linda Gaines compensation in the amount of $186.67 per week continuing after the initial 400-week period for the remainder of plaintiff Linda Gaines' life or until her re-marriage.
2. A reasonable attorney fee in the amount of 25% of the compensation approved and awarded for plaintiff Linda Gaines is approved and allowed for plaintiff's counsel. Beginning after the expiration of the initial 400-week period, defendants shall forward every fourth compensation check directly to plaintiff's counsel of record.
3. Defendants shall pay the costs.
This 21st day of June 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER