***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties were subject to the North Carolina Workers' Compensation Act at all times relevant hereto, the employer employing the requisite number of employees to be bound under the provisions of said Act.
2. An employee-employer relationship existed between the parties at all times relevant hereto.
3. Builders Mutual Insurance Company was the carrier on the risk on the date of decedent's death.
4. On July 31, 2002 decedent died as a result of the extreme conditions under which he was working on that date which precipitated the myocardial infarction, which resulted in his death.
5. Decedent's average weekly wage was $960.58, yielding a workers' compensation rate of $640.39.
6. Decedent's medical records, including family physician records from prior to July 31, 2002 as well as medical records for Sue Speer, the surviving spouse of decedent, were stipulated into evidence as Stipulated Exhibit 1.
7. The issues before the undersigned are (i) whether the deceased plaintiff sustained an injury by accident arising out of and in the course of employment with the employer pursuant to N.C. Gen. Stat. § 97.2(6) and (10); and (ii) whether Sue Speer, widow, was unable to support herself because of physical disability as of July 31, 2002.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Decedent was born on March 11, 1954 and was 48 years old at the time of his death on July 31, 2002.
2. Since 1997, decedent worked as a plumbing supplies sales associate for Lowe's Home Improvement Warehouse.
3. Decedent also owned his own plumbing business since 2001. Decedent devoted approximately ten percent of his time to this business. Decedent was particularly talented in making plumbing parts. Much of his work involved repairing and fabricating plumbing for older, historic homes in the West End section of Winston-Salem. If a plumbing job required that a trench be dug, Decedent would hire someone to dig the trench, by hand or with equipment. He did not typically operate trench-digging equipment.
4. On July 29, 2002, decedent changed jobs and began work for Bodenheimer Plumbing as a plumbing service technician.
5. On Monday, July 29 and 28, 2002, decedent worked with a "buddy" riding around getting accustomed to the work routine.
6. On July 31, 2002, his third day on the job, decedent was assigned to work with Thomas Holder. They were instructed to dig a ditch and lay pipe at a private residence.
7. Thomas Holder arrived at the work site at 5116 Carversham Road, Winston-Salem, between 10:00 a.m. and 10:30 a.m. and found decedent had already begun working on the job. The temperature was approximately 95 degrees and the ground was very hard.
8. Although plumbers with Bodenheimer Plumbing were required to work outdoors on a regular basis and dig in hard soil, the ground was very hard and it was very hot on July 31, 2002. The weather conditions were so intense, the two were required to take frequent rest breaks to cool off and drink fluid.
9. At approximately 12:00 noon, Mr. Holder and decedent took a lunch break for approximately one hour. Prior to the lunch break, decedent had complained of some shoulder pain. After lunch, the two men returned to the same job site and began digging again. The ground was so hard the men had to dig with mattocks in addition to shovels and post-hole diggers. They were unable to use a trencher due to other underground lines in the area. Since the ground was so hard, they were required to break up the soil and then dig it out with a shovel. Although plumbers are required to dig in the ground on a fairly regular basis, it was unusual to encounter such hard ground. Further, this was a new job for plaintiff and he had not grown accustomed to this work yet or established a normal routine.
10. Sometime during the afternoon, decedent began to move his left shoulder in circles, complaining that it hurt him. Mr. Holder instructed decedent to sit down and take a break because the job did not have to be finished that day. Decedent sat down for a short period of time, then got up saying "I gotta rest" then passed out, falling backwards onto the ground. Mr. Holder called decedent's name several times and when he did not respond, Mr. Holder used a cell phone to contact Bodenheimer Plumbing and asked that an ambulance be sent. Decedent died while Mr. Holder was attending to him. Decedent was transported to Forsyth Medical Center where he was pronounced dead at 4:37 p.m.
11. The Full Commission finds that the physical exertion required of decedent was unusual and excessive and, in combination with the environmental elements on July 31, 2002, constitutes an injury by accident pursuant to N.C. Gen. Stat. § 97-2(6) and (10).
12. The final autopsy report completed on August 1, 2001 gave a final diagnosis of sudden death due to severe coronary atherosclerosis and interstitial myocardial fibrosis.
13. Decedent was not an active man. He was overweight and suffered from early onset diabetes and high blood pressure. He had cardiac risk factors, which were being treated, but he was not suffering from any complications from these conditions.
14. On July 26, 2002, only five days prior to his death, decedent underwent a complete physical examination at Brookview Hills Internal Medicine, by Louis Valente, Physician's Assistant. Following the exam, decedent was not instructed to limit his activities. It was recommended that decedent begin an exercise program, but that before doing this, he should have a screening exercise test to better assess his cardiac condition.
15. Decedent had been a patient with Brookview Hills since 2000 for monitoring of his hypertension, non-insulin dependent Type II diabetes diagnosed in 2001, and other general medical concerns. He was taking medication for his diabetes, blood pressure and high cholesterol.
16. Although decedent had cardiac risk factors, he had never complained of chest pain, and on the date of his physical exam reported no chest pain or palpitations. Decedent reported doing well with no complaints, only needing blood pressure, cholesterol and glucose levels checked.
17. Mr. Valente stated to a reasonable degree of medical certainty that the activities decedent was performing at work for Bodenheimer Plumbing on July 31, 2002, precipitated his heart attack.
18. Dr. Wittmer opined that the findings by the pathologist on autopsy, were consistent with an acute cardiac event, either cardiac infarction or fatal arrhythmia related to atherosclerosis, all consistent with what is generally known as a heart attack.
19. Dr. Wittmer testified to a reasonable degree of medical certainty, and it is so found, that given decedent's risk factors for heart disease, the conditions under which he was working on July 31, 2002 precipitated his heart attack and resulting death.
20. Dr. Sammy Gammenthaler, cardiologist, testified that the decedent's death was not caused by the work he was performing on July 31, 2002, concluding that physical exertion rarely precipitates cardiac arrest.
21. Prior to formulating an opinion, Dr. Gammenthaler reviewed decedent's medical records, an autopsy report and a letter stating the facts of the events of July 31, 2002, from defense counsel. The facts as put forward by defendants were that the decedent, Steven Speer, had begun digging with a co-worker outside at 8:30 the morning of July 31, 2002, that the decedent was digging dirt with a shovel in very hard ground, that the job was physically demanding, that they took an hour lunch, that he worked constantly from 1:00 p.m. until his death. The letter also indicates that the intensity of the job was less than normal, and they were not working very hard which is not found herein to be accurate.
22. Dr. Gammenthaler admitted it is very difficult to identify a triggering event for a heart attack, but that other factors, such as family history, cholesterol problems, high blood pressure and diabetes, make a patient more at risk for heart disease than physical exertion. However, Dr. Gammenthaler then testified, "Now, that's not to say that heart attacks or those types of events cannot occur with physical exercise to say that exercise never plays a role would be disingenuous extreme physical exertion in an individual who was not accustomed to doing extreme exertion could have more of a contributing factor in certain circumstances."
23. The Full Commission gives greater weight to the opinion of Dr. Wittmer than to that of Dr. Gammenthaler.
24. Based upon all the evidence in this case, the Full Commission concludes that decedent's heart attack was caused by the events at work on July 31, 2002.
25. At the time of decedent's death, he was married to Sue Speer. Mrs. Speer married the decedent on February 14, 1988.
26. Mrs. Speer worked for R.J. Reynolds from 1978 until 1995. In 1995, Mrs. Speer accepted a severance package being offered to employees primarily due to her declining health.
27. Mrs. Speer did not work for approximately one year after resigning from R. J. Reynolds. She then agreed to work as a secretary for two churches, Peacehaven Baptist Church and First United Church of Christ. These jobs provided her 30 hours of work each week. After working this schedule for ten months, Mrs. Speer resigned from Peacehaven Baptist Church due to physical health problems, reducing her work hours to twelve each week at First United Church of Christ.
28. Plaintiff suffers from a variety of medical problems including insulin dependent diabetes II, seizure disorder, cardiac problems, back problems, migraine and arthritis.
29. Although plaintiff has not sought to be declared disabled for social security purposes, Louis Valente, P.A. would have seriously considered supporting her claim for disability. Further, he indicated that at the time of decedent's death, plaintiff was in very poor health. Dr. Wittmer stated it was unlikely considering plaintiff's health that she could sustain a 40 hour work week.
30. The Full Commission finds that plaintiff was unable to support herself as of July 31, 2002, the date of death of the employee due to physical disability.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The deceased employee sustained an injury by accident arising out of and in the course of employment with defendants pursuant to N.C. Gen. Stat. § 97-2(6) and (10).
2. Mrs. Speer was the widow of decedent on July 31, 2002. Accordingly, Sue Speer is presumed to be wholly dependent of the decedent. N.C. Gen. Stat. §§ 97-38, 97-39, 97-2(14).
3. Mrs. Speer is entitled to compensation for decedent's death at the rate of $640.37 per week for a period of 400 weeks beginning July 31, 2002. N.C. Gen. Stat. § 97-38.
4. Plaintiff was unable to support herself as of the employee's death on July 31, 2002, due to her seizure disorder, cardiac problems, back pain and numerous other medical conditions. N.C. Gen. Stat. § 97-38; Hedrick v.Southland Corp., 41 N.C. App. 431, 255 S.E.2d 198 (1979).
5. As a result of plaintiff Sue Speers' inability to support herself as of July 31, 2002, she shall receive compensation payments that shall continue during her lifetime or until re-marriage. N.C. Gen. Stat. § 97-38;Hedrick v. Southland Corp., 41 N.C. App. 431, 255 S.E.2d 198 (1979).
6. Mrs. Speer is entitled to payment of the burial expenses incurred as the result of decedent's death not to exceed $3,500.00. N.C. Gen. Stat. §97-38.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney fees hereafter set forth, defendants shall pay decedent's spouse $640.39 a week for 400 weeks from July 31, 2002. Defendants shall pay plaintiff compensation in the amount of $640.39 per week continuing after the initial 400-week period for the remainder of plaintiff's life or until her re-marriage.
2. Defendants shall pay all medical expenses incurred by decedent as a result of this compensable injury by accident.
3. Defendants shall pay burial expenses not exceeding $3,500.00.
4. A reasonable attorney's fee of 25% of compensation due the deceased's widow under Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel. All attorney's fees due on accrued compensation shall be paid in one lump sum.
5. Defendants shall pay the costs.
This the 30th day of May 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DCS/llc